The opinion of the Court was delivered by
Wakdlaw, A. J.
This is a contest between the cred. itors of David Bowman, on the one side, and his brothers, who survived him, on the other. It presents one of those puzzling questions which frequently arise in the construction of instruments, unskilfully drawn, yet stuffed with terms of art, in the construction of which the mind naturally struggles to give effect to what is believed to be the intention, notwithstanding technical rules to the contrary.
Although the instrument here sounds like a will, and was in fact a disposition of property designed to avail only after the donor’s death, yet it was irrevocable, was recorded soon after it was made, and has by all parties been, without question, treated as a deed. It is a deed which, according to the case of Chancellor vs. Windham, (1 Rich. 164,) and other cases decided in our Courts, must be considered a covenant to stand seized to uses, whereby a freehold may be limited to commence -in futuro; and it may be noticed in passing, that our Act of 1853, (12 Stat. 298,) which removes all difficulty as to the general words “ die without issue of the body,” extends to both deeds and wills. The indulgence respecting executory devises and untechnical words *276 allowed to carry a fee simple, which has been accorded to wills is, however, denied to deeds.
An examination of the whole instrument, it is believed, will show that the intention of the donor was to divide his lands amongst his children, reserving to himself enjoyment thereof during his life, and separating his children into two classes according to sex; to give to each child enjoyment for life; and if he or she should die, leaving children, to let his or her heirs or assigns take his or her parcel; but if any of them died without leaving children, to require that the parcels of those so dying should pass to survivors— sons’ parcels to surviving sons, and daughters’ parcels to surviving daughters. The provision for survivorship upon contingency to take effect whenever the contingency might happen, was, I apprehend, the controlling idea of the instrument; for if the intention was merely to confer upon each child that might be living, at the donor’s death, a fee simple in the parcel allotted to him or her, and also in shares of the parcels of those that might have died in the donor’s lifetime — in effect to prevent lapse — much cumbrous phraseology might have been easily avoided by the use of a few simple words, which common sense would suggest even to the unskilled who undertake to become conveyancers.
If this instrument was a will, there would be no difficulty in carrying out the supposed purpose; but we must remember that by deed a fee cannot be mounted on a fee, nor a fee simple be created without words of inheritance. To simplify the case, let us look only to what concerns the sons. There is, first in the order of the time for enjoyment, a life-estate in the father; second, a life-estate to each son ; third, upon the death of a son without issue of his body, a life-estate in the'other sons then living — there being no words of inheritance, nor gift to the issue, and our cases forbidding implication of such gilt; fourth and last, this provision, “ at my death, it ” (the whole property conveyed *277 by tbe deed shall) “be immediately transferred to my sons and daughters, as above mentioned, to their heirs or assigns.” When and to whom did the fee simple created by this final provision pass ? It passed immediately upon the death of the donor to every son and daughter in respect to his or her parcel, but was in each a vested remainder. “ As above mentioned” does not mean the sons and daughters above named; for, if so, they would have taken the whole property as tenants in common; but it means in such parcels and under such limitations as are above mentioned. There was then given to each son a life-estáte, with mediate remainder to his heirs, and thus, under the rule in Shelly’s case, the son, as ancestor, took both the life-estate and the fee simple; but the intermediate contingency prevented a merger of the life-estate in the fee. Upon the happening of the contingency — his death without issue of his body — ■ a deceased son’s fee simple passed to his surviving brothers, his fee simple opening to admit tbe limitation to survivors as it arose. (4 Kent Com. 210, § 59, Shep. Touch. 128, ch. 6.) There was not a fee mounted upon a fee, but a fee made subject to a contingency, whereby it was defeated. When by the rule in Shelly’s case the seeming inconsistency between the two grants, one for life and the other in fee, has been overcome, the only remaining question is whether the fee is absolute or conditional; and by the plain limitation to the sons that are “ then living,” that question is determined. That such contingent or conditional limitation may be made by deed, the authorities cited in the standard works, to which reference has just been made, will show.
If, however, it should be resolved that the construction here given to the first clause takes too much liberty with its words, the same result is reached, as the Chancellor reached it, by regarding the two clauses of the instrument as repugnant, and applying the rule that in a deed of two repugnant clauses, the first shall prevail. This rule we *278 regard as one for final resort, when all reasonable modes of reconciling apparent repugnancy have failed ; and we think that here a construction may be adopted which gives effect to every part of the instrument.
For the creditors, who desire to establish in David Bowman, now deceased, an absolute fee simple which may be subject to their demands, reliance has been placed upon what is said to be a rule of construction, that “ where a gift is to take effect in possession immediately on testator’s death, words of survivorship refer to the date of’the testator’s death, and are intended to provide for the contingency of the death of the objects of his bounty in his lifetime, unless some other point of time be indicated by. the will.” Extending to this deed, designed for posthumous effect, the supposed rule, which hitherto has been confined to wills, and acknowledging the propriety of its application in Pressley vs. Davis, (7 Rich. 107,) we find that, even as there said, “if the enjoyment be postponed by the interposition of a particular intent, such as a life-estate, or by fixing a future period for division such as the attainment of the legatee to full age, the words of survivorship more naturally relate to the period of division and enjoyment.” Here a life-estate was interposed, a contingency specified, and a future period indicated by the words “ then living.” The survivorship then relates to the period when the enjoyment of the survivors was to begin — the death of the son who first took the parcel without issue of his body. Those who desire to see the history and present extent of the supposed rule, which the creditors invoke, may find the whole compressed into brief compass by Mr. Jarman. (Jarman on Wills, 450, 631, ch. 48, § 3.) There the steps by which a doctrine once established upon infirm reasoning, was overthrown, have been traced, the potency of a contingency exhibited, and the result attained that "the rule which reads a gift to survivors, simply as applying to objects living *279 at the death of the testator, is confined to those cases in which there is no other period to which survivorship can be referred; and that when such gift is preceded by a life-estate or other prior interest, it takes effect in favor of those who survive the period of distribution, and to those only.”
This case does not involve any question between brothers and children of a pre-deceased brother, nor any concerning accruing shares, and no intimation of opinion upon any of those questions is intended to be made.
The decretal order of the Chancellor is affirmed.
Dunkin, C. J., concurred.
Inglis, A. J., absent at the hearing.

Decree affirmed.